## Deskins
## v.
## Youngstown
*[Cite as 4 AOA 243]*

*Case No. 88 C.A. 215
Mahoning County, (7th)
Decided June 29, 1990*

*William C. H. Ramage, Esq., Richard D.
Goldberg, Esq., 21 S. Phelps Street, Youngstown,
Ohio 44503, for Plaintiff-Appellant.*

*Edwin Romero, Law Director, Cheryl L. Waite,
Asst. Law Director, City Hall, 26 S. Phelps Street,
Youngstown, Ohio 44503, for Defendant-Appellee.*

DONOFRIO, J.

This is an appeal from the Court of Common
Pleas of Mahoning County, Ohio, from a judg-
ment after a jury returned a verdict in favor of
defendant-appellee, city of Youngstown.

On March 22, 1985, plaintiff-appellant,
Steve Deskins, was involved in a one-vehicle
accident on Cedar Street in Youngstown, Ohio.
The accident occurred while appellant was oper-
ating his motorcycle in a northerly direction on
Cedar Street, approaching the Cedar Street
Bridge. Appellant lost control when the motorcy-
cle hit some gravel on the approach to the bridge.
As a result of this accident, appellant suffered
injuries.

On November 17, 1986, appellant filed a
complaint claiming that appellee failed to proper-
ly maintain the Cedar Street Bridge due to the
substantial amount of accumulated gravel on the
side of the road at the approach to the bridge.

Appellant sets forth one assignment of error,
as follows:

"The trial court committed error prejudicial
to the plaintiff-appellant by allowing testimony
of the investigating officer pertaining to his
opinion of the cause of the accident and the speed
of the plaintiff-appellant's vehicle * * *"

We find this assignment of error has merit
for the following reasons.

The subject of appellant's assignment of
error is the testimony given by officer Rodney
Bowyer. Officer Bowyer had been a patrolman
with the city of Youngstown for fourteen years.
Officer Bowyer testified that he was not an
accident reconstruction expert, and that he had
no special training in that area. The officer
testified that he has investigated other accidents,
including motorcycle accidents, and has, in the
past, estimated the speed of automobiles from the
distances they skidded. Over numerous objec-
tions, the officer was permitted to testify that he
had, in fact, marked the box for excessive speed
as a contributing cause of the accident.

Testimony by experts is governed by the
Ohio Evid. R. 702, which states:

"If scientific, technical, or other specialized
knowledge will assist the trier of fact to under-
stand the evidence or to determine a fact in issue,
a witness qualified as an expert by knowledge,
skill, experience, training, or education, may
testify thereto in the form of an opinion or other-
wise."

Generally, on who has special knowledge
and expertise in a given field may give his opin-
ion as an expert. However, the controlling factors
are also as presented by Ohio Evid. R. 703, which
states:

"The facts or data in the particular case
upon which an expert bases an opinion or infer-
ence may be those perceived by him or admitted
in evidence at the hearing."

In this case the officer did not, by personal
observation, observe the accident. At pages 73-74
of the record, the officer testified as follows:

"Q  Now, you made no observations of this
motorcycle before the accident?

"A  Before? No.

"Q  Nor did anybody to your knowledge?

"A  Not that I know of, sir.

"Q  Because you have no opinion as to the
speed that this motorcycle was traveling at the
time of this incident, true?

"A  No, sir.

"Q  And you have no idea today how fast he
was going?

"A  No. Other than I think it was going a
pretty good speed, but I can't prove it.

"Q Did you make any notation of excessive speed here in terms of how much speed he was traveling?

"A No.

"Q The fact is you put unknown. Correct?

"A Right."

The basis for the officer's determination of speed is given at pages 93-94 of the record, whereby, on cross-examination by the appellee city of Youngstown, the question was asked, at page 93, as follows:

"Q * * * (I)n the past in your experience as a police officer and in investigating accidents where try and determine speed of an automobile by your determination of distances (sic)?

"A Yes, sir.

"Q How often do you think you may have done that in the past?

"A It's hard to say.

"Q Can you give me a rough estimate or approximation how many times you may have used distance measurements to calculate speed or approximate speed?

"A May be thirty-forty times.

"Q Through the course of your --

"A Fourteen years.

"Q -- fourteen years?

"A Like I said it would be an approximate because I would have no way of proving it. It would be an approximate figure.

"Q Is this something that is a regular accepted practice within the police force?

"A Something I'm sure I do and most of us do."

Under this assignment of error, appellant argues that, on cross-examination, the officer admitted that part of the basis for his opinion was the weight of the motorcycle. He was then asked what the weight of the motorcycle was and responded by saying he had no idea (Tr. 101). The officer agreed that the coefficient of friction on the roadway would have an important effect on the calculation of speed or velocity from skid marks. The officer testified that one had to go to a specialized school to learn to calculate the coefficient of friction. The officer had not gone to any such school and had no expertise in making that determination (Tr. 101, 102). When the officer made these admissions, counsel for appellant moved the court to strike the officer's testimony concerning his conclusion that the accident was the result of the excessive speed of the motorcycle. The court overruled this motion.

The officer further testified, at pages 100-102 of the record, as follows:

"Q All right. Now, you made certain conclusions that the motorcycle was traveling at an excessive rate of speed. That was your opinion. Correct?

"A I wouldn't say excessive. I would say high rate -- higher rate of speed than normal.

"Q What is the normal rate of speed?

"A Thirty five miles an hour.

"Q You said that you stepped off one hundred thirty feet? One hundred thirty feet?

"A One hundred thirty feet, yes.

"Q If may calculations are correct by your statement in order to reach that point you would have marked off -- walked off forty-three and one-third steps?

"A More or less. Yes, sir.

"Q All right. More or less. How did you come to the conclusion that you did?

"A Approximately three feet a step.

"Q Pardon?

"A Approximately three feet per step.

"Q Approximately. In order to reach an idea of how fast this motorcycle was operating you took into consideration the weight of the motorcycle?

"A Yes.

"Q How much does that motorcycle weigh?

"A I have no idea.

"Q Did you take into consideration the equation of the coefficient of friction of the roadway?

"A No, sir.

"Q Are there other coefficients and frictions on the roadway at which you would render the equation you determined -- speed or velocity -- to arrive at a formula?

"A Yes, sir. Well, the weight would be -- it all changes. You have to go to a specialized school to determine that.

"Q Did you go to any such school?

"A No, sir.

"Q Do you have any expertise in making that determination?

"A No, sir."

An opinion given by an expert cannot be based on mere speculation. As stated in Ohio Evid. R. 703, the facts or data of the particular case upon which the expert bases an opinion or inference must be either perceived by him or admitted in evidence at the hearing. It is stated in 43 Ohio Jurisprudence 3d 494, Evidence and Witnesses, Section 612:

"As a general proposition, an opinion of an expert must be based upon facts, proved or assumed, sufficient to form a basis for an opinion,

and cannot be invoked to supply the substantial facts necessary to support that conclusion. An opinion formed or based upon argumentative statements or mere inferences and speculations is not competent. Thus an opinion speculative and theoretical only is not within the domain of expert testimony."

In the instant case, there is a lack of sufficient underlying data and the definiteness of information from which the officer could base his conclusion that speed was the cause of the accident. The officer's testimony did not provide a sufficient foundation to properly support his conclusion. In 43 Ohio Jurisprudence 3d 496, Evidence and Witnesses, Section 613, it states:

"If the expert witness called upon to give expert testimony is acquainted with the facts of the case --that is, if he has personal knowledge or has made personal observation--he may give his opinion upon the basis of his knowledge and observation in response to direct interrogation, provided he is shown to have sufficient knowledge of the facts to enable him to form an opinion entitled to be given weight by the jury, and provided the witness first testifies to the facts in his own knowledge upon which his opinion is based."

For the foregoing reasons, we find that the appellant's assignment of error has merit and therefore sustain it, and accordingly, reverse the judgment of the trial court.

*Judgment reversed and
cause remanded.*

O'NEILL P.J., and COX, J., concur.